IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MATTHEW CICCHI, individually and
on behalf of all others similarly situated,

    Plaintiff,

       v.

GRAPHIC             PACKAGING
INTERNATIONAL, LLC, GRAPHIC
INTERNATIONAL, INC.
    Defendant.

CIVIL ACTION FILE
NO. 1:24-CV-2400-TWT

## OPINION AND ORDER

This is a Fair Labor Standards Act ("FLSA") case. It is before the Court on Defendants Graphic Packaging International, LLC and Graphic Packaging International, Inc.'s Partial Motion to Dismiss [Doc. 45], the Plaintiff's Motion for Conditional Collective Certification [Doc. 50], and the Plaintiff's Motion for a Status Conference [Doc. 61]. For the reasons stated below, the Defendants' Partial Motion to Dismiss [Doc. 45] is GRANTED in part and DENIED in part, the Plaintiff's Motion for Conditional Collective Certification [Doc. 50] is DENIED, and the Plaintiff's Motion for a Status Conference [Doc. 61] is DENIED as moot.

## I.   Background[1]

The Defendant (collectively referred to as "Graphic Packaging

---

[1] The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

International" or "Defendant") employ thousands of hourly manufacturing employees in dozens of facilities across the United States. (2d Am. Compl. ¶¶ 8-10 [Doc. 42]). Plaintiff Matthew Cicchi was employed by the Defendant as an hourly manufacturing employee in Michigan between August 2021 and April 2024. (*Id.* ¶ 6). Putative members of the collective action are or were employed by the Defendant in the United States as hourly manufacturing employees during the past three years. (*Id.* ¶ 7).

The Defendant provided prospective hourly employees with a written offer setting forth the job title, the offered rate of pay, and the conditions of employment. (*Id.* ¶ 12). The Defendant then maintained documents for each hourly employee, including offer letters, pay stubs, and/or payroll records. (*Id.* ¶ 13). The Defendant paid its non-exempt hourly manufacturing employees at varying hourly rates, and they also incorporated routine and non-discretionary bonuses into their pay structure, such as a shift premium. (*Id.* ¶¶ 16-17). The Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner. (*Id.* ¶ 19).

On or about August 20, 2021, the Plaintiff accepted an offer to work at the Defendant's location in Kalamazoo, Michigan with the understanding that his base hourly rate would be paid for all hours worked. (*Id.* ¶ 14). The Plaintiff's most recent base hourly rate was $28.63. (*Id.* ¶ 16). Throughout his employment, the Plaintiff earned a shift premium when he worked the second

and/or third shift. (*Id.* ¶ 18). "However, [the] Defendant[] failed to incorporate any shift premiums into their hourly employees' regular hourly rate calculation, resulting in *prima facie* violations of the FLSA." (*Id.* ¶ 27). For example, the Plaintiff's "pay stub for the pay period 9/18/2023 through 9/24/2023 shows 56.50 hours of work, a base hourly rate of $27.50, and gross earnings of $1,788.45 inclusive of $7.83 in shift premium pay. However, his overtime rate did not account for the shift premium pay and, therefore, violated the FLSA." (*Id.* ¶ 30). The Defendant also failed to include other non-discretionary remuneration into the regular rate calculation. (*Id.* ¶ 32).

The Plaintiff also complains of the Defendant's time-rounding policy. The Defendant's policy rounded the employees' clock in and out times to match their shift starting time. (*Id.* ¶ 36). The Defendant expected hourly workers to arrive at work 30 minutes prior to their starting time but they were not allowed to immediately clock in and begin working. (*Id.* ¶ 37). The Defendant permitted the hourly employees to clock in within seven minutes of their starting time and clock out within seven minutes of their stopping time without incurring disciplinary "points." (*Id.* ¶¶ 38-39). The Defendant then rounded the time records to match the shift starting/stopping time and did not pay for any pre-shift or post-shift work performed in those seven-minute windows. (*Id.*). The Plaintiff alleges that this rounding policy almost always inured to the Defendant's benefit. (*Id.* ¶ 44).

3

Based on these allegations, the Plaintiff asserts a collective action claim under the FLSA for failure to pay overtime. (*Id.* ¶¶ 72-82). He also asserts on behalf of a nationwide class a breach of contract claim and an unjust enrichment claim. (*Id.* ¶¶ 83-105). The Defendant moves to dismiss all claims against GPI Inc. and to dismiss the breach of contract and unjust enrichment claims in their entirety. (*See generally* Defs.' Br. in Supp. of Mot. to Dismiss [Doc. 45-1]). The Plaintiff moves for conditional collective certification with respect to the FLSA claim. (*See generally* Pl.'s Br. in Supp. of Mot. to Certify [Doc. 50-1]).

## II.    Legal Standard

### A. Motion to Dismiss

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim; however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the Court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir.

4

1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### B. Motion for Conditional Collective Certification

The FLSA permits an employee to bring an action for unpaid overtime compensation "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Participants must affirmatively opt in to the suit by filing a written consent with the Court. *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1258-59 (11th Cir. 2008). Because of the opt-in requirement, "the decision to certify the action, on its own, does not create a class of plaintiffs." *Id.* at 1259. "Therefore, the importance of certification, at the initial stage, is that it authorizes either the parties, or the court itself, to facilitate notice of the action to similarly situated employees," who then have the opportunity to opt in. *Id.* The notice stage is the first of a two-stage procedure for determining whether a collective action should be certified. *Id.*

Although the FLSA itself does not define "similarly situated," the Eleventh Circuit has held that employees must be similarly situated "with respect to their job requirements and with regard to their pay provisions . . . [courts are not to determine] whether their positions are identical." *Id.* at 1259-60. The Court should determine (1) whether employees sought to be included in the putative class are similarly situated with respect to their job requirements and pay provisions; and (2) whether there are other employees who wish to opt in to the action. *Campo v. Granite Serv. Int'l, Inc.*, 584 F. Supp. 3d 1337, 1342 (N.D. Ga. 2022) (citing *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991)). It is the plaintiff's burden to establish a "reasonable basis" for his assertion that other similarly situated employees exist. *Morgan*, 551 F.3d at 1260 (quotation marks and citation omitted). The Eleventh Circuit describes this burden as "not particularly stringent," "fairly lenient," and "flexible," but the plaintiff must rely on more than "only counsel's unsupported assertions that FLSA violations are widespread and that additional plaintiffs would come." *Id.* at 1261 (citation modified).

The second stage, decertification, takes place post-discovery and is therefore "less lenient," with "the plaintiff bear[ing] a heavier burden" to establish similarity. *Id.* At this stage, the court "has a much thicker record than it had at the notice stage, and can therefore make a more informed factual

determination of similarity." *Id.* If the court finds that the plaintiffs are similarly situated, "the district court allows the representative action to proceed to trial." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (quotation marks and citation omitted). If they are not, "the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Id.* (quotation marks and citation omitted). The original plaintiff's case then continues to trial as to their individual claims. *Id.* At both stages, the determinations made are within the district court's discretion. *Morgan*, 551 F.3d at 1260-61.

## III.    Discussion

The Court will start by considering the Defendants' Motion to Dismiss and then turn to the Plaintiff's Motion for Conditional Collective Certification.

### A.  Motion to Dismiss

The Defendant makes several arguments in favor of its Motion to Dismiss.

#### 1.  Claims Against GPI, Inc.

The Defendant argues two points in support of dismissal, with prejudice, of Defendant GPI, Inc. from this present action. First, the Defendant argues that dismissal of GPI, Inc. is warranted because GPI, Inc. no longer exists. (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 19-20). In support, the Defendant shows that GPI, Inc. changed its name to "Graphic Packaging International,

7

LLC" in 2018 and attach an Amended Certificate of Authority from the Georgia Secretary of State. (Br. in Supp. of Defs.' Mot. to Dismiss, Ex. E [Doc. 45-6]). Second, the Defendant argues that no claims can be brought against GPI, Inc. because the present actions by the Plaintiff under Georgia and federal law do not contain statutes of limitation that date back to when GPI, Inc. existed as an entity.[2] (*See* Br. in Supp. of Defs.' Mot. to Dismiss, at 20-21).

In response, the Plaintiff argues that its Motion for Conditional Certification of a putative collective may include members who worked for GPI, Inc. before the company's name change, and any dismissal of GPI, Inc. would be premature because a potential nationwide collective may contain individuals subject to varying state law statute of limitations periods. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 8-9). In support, the Plaintiff directs the Court's attention to two documents. First, the Plaintiff argues that the collective bargaining agreement ("CBA") shows GPI, Inc.'s participation in the matter as a party to the CBA. (*Id.*, at 8). Second, the Plaintiff shows that within the First Amended Complaint, former plaintiff Jimmie Young presented claims

---

[2] The original Complaint was filed on May 31, 2024. (*See generally* Compl. [Doc. 1]). GPI, Inc. changed its name on February 14, 2018. (*See* Defs.' Mot. to Dismiss, Ex. E, [Doc. 45-6], at 1). Under federal law, the statute of limitations period for FLSA claims is a maximum of three years from the date the cause of action accrues. 29 U.S.C. § 255(a). Under Georgia law, the statute of limitations period is four and six years for unjust enrichment and breach of written contract, respectively, from the date the cause of action accrues. O.C.G.A §§ 9-3-26, 9-3-23.

for violations of the Illinois Wage Payment and Collection Act against GPI, Inc., which has a 10-year statute of limitations dating back to before GPI, Inc. changed its name. (*Id.*, at 9).

When a defendant brings forth a Rule 12(b)(6) motion to dismiss, the defendant must show that the plaintiff, in their complaint, has failed to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. The Defendant has failed to meet this burden. The Plaintiff filed his Second Amended Complaint with the intent to pursue a nationwide collective and class action. While the Defendant may be correct to assert that GPI, Inc. does not exist, this alone does not extinguish the potential claims against the entity. GPI, Inc. existed prior to 2018, signed the CBA that the Defendant attached to its motion to dismiss, and employed individuals who may also have claims against GPI, Inc outside the state of Georgia. (*See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 8-9). Furthermore, the Defendant has provided no other source of authority that justifies the position that dismissal of GPI, Inc. is warranted on these facts. Although Young withdrew his Consent to Join Form between the filing of the First and Second Amended Complaints, there is still the *possibility* that other class members may exist that have proper claims against GPI, Inc. Because this possibility exists, dismissal of GPI, Inc., especially with prejudice, is unwarranted. Therefore, the Court will not dismiss GPI, Inc. from the

litigation at this stage.

### 2. Breach of Contract and Unjust Enrichment Claims

The Defendant attaches collective bargaining agreement documentation to its Motion to Dismiss. The Plaintiff argues that the Court cannot consider these documents at this time because they are outside the Second Amended Complaint and do not meet the requirements for consideration. The Court will first discuss the Defendant's challenged exhibits before turning to whether such documentation may be considered in ruling on the Motion to Dismiss.

On January 26, 2014, the Defendant entered into the CBA with United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("Union") effective between January 2017 and January 2023. (Br. in Supp. of Defs.' Mot. to Dismiss, Ex. C, at 47, 94 [Doc. 45-3] ("CBA"). Later, the Defendant extended the CBA to continue through 2027 through a Memorandum of Understanding ("MOU"). (*Id.*, Ex. D, at ¶ 1 [Doc. 45-4] ("MOU")). The CBA "recognizes the Union as the exclusive representative for the purposes of collective bargaining" for the Defendant. (CBA at 2). The CBA's coverage includes "all persons employed by the Packaging Business of Graphic Packaging International, Inc. in the Kalamazoo, Michigan area," with certain inapplicable exceptions. (*Id.*). The terms of the CBA impose a duty on the Defendant to pay its employees that are members of the Union a certain wage pursuant to a wage schedule. (*Id.* at

45, 47-49). Between August 2021 and April 2024, the Plaintiff was paid a standard wage pursuant to the CBA as a member of the Union. (*See* 2d Am. Compl. ¶ 6; Br. in Supp. of Defs.' Mot. to Dismiss, Ex. A [Doc. 45-2]).

When ruling on a motion to dismiss, the court may not consider any evidence beyond the face of the complaint and any additional documents attached thereto. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). However, this rule is not absolute. An exception exists when (1) the defendant attaches the document to its motion to dismiss, (2) its contents are not in dispute, (3) the plaintiff refers to a document in the complaint, and (4) the document is central to the plaintiff's claim. *Id.* If the evidentiary requirements are not met, the court must convert the motion to dismiss into a motion for summary judgment if such evidence is considered. *Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005). In such a scenario, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, the Defendant has attached the CBA and the MOU to its Motion to Dismiss, satisfying the first, threshold element. (*See generally* Br. in Supp. of Defs.' Mot. to Dismiss, Exs. C–D). Therefore, the Court now turns to the remaining three elements to determine whether consideration of the CBA within the Motion to Dismiss is proper.

### a. Authenticity of the CBA

Under the second element, the contents of the CBA must not be in dispute between the parties. To satisfy this element, the authenticity of the document attached to the complaint must not be challenged by the plaintiff. *See Day*, 400 F.3d at 1276 (discussing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). "Authentication evaluates the genuineness of a document, not its admissibility." *Larebo v. First Consumer Credit, Inc.*, 2008 WL 11417160, at *4 (N.D. Ga. Apr. 14, 2008), *report and recommendation adopted*, 2008 WL 11417154 (N.D. Ga. July 29, 2008).

Here, the Plaintiff fails to explain why the documents in question are not authentic. *See id.* (striking a challenge to authenticity when the plaintiff failed to explain why the documents were not authentic). Instead, the Plaintiff challenges the authenticity of the CBA by impermissibly shifting the burden onto the Defendant to demonstrate the CBA's admissibility. (*See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 6-7 [Doc. 48]). This alone is not sufficient to challenge the authenticity of the CBA and related documents. Therefore, the CBA's contents are not in dispute.

### b. Reference to the CBA

Under the third element, the complaint must reference the CBA. The Plaintiff's Second Amended Complaint puts forth state law claims that hinge on the general allegation that the Defendant paid the Plaintiff less than what

he was owed because of alleged unlawful rounding that resulted in work without pay. (*See* 2d Am. Compl. ¶¶ 35-53, 78-79, 87, 90, 101-02). However, nowhere in the Second Amended Complaint is there an explicit reference to the CBA. The Defendant argues that the Second Amended Complaint implicitly references the CBA within its breach of contract and unjust enrichment claim because the CBA is the only "vessel" that contains the terms of the wage paid to the Plaintiff. (Br. in Supp. of Defs.' Mot. to Dismiss, at 12 n.8). The Defendant further argues, without opposition, that the Union was the Plaintiff's exclusive bargaining representative and therefore the CBA applies to the Plaintiff. (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 6 [Doc. 51]). The Court agrees.

Article II of the CBA states that the Defendant recognizes the Union as the exclusive representative for the purpose of collective bargaining of the employees covered by the CBA. (CBA at 2). The Plaintiff, as a member of the Union, is bound to the CBA in any offer letter made by the Defendant, whether or not the letter references the rounding policy engaged in by the Defendant. While the Plaintiff is correct to assert that the CBA does not explicitly reference approval of a rounding policy, Article IV of the CBA contains the Union's acknowledgment of the Defendant's right to establish rules and regulations "to maintain order and efficiency." (*Id.* at 3). Amendments to the CBA within the MOU more specifically discuss the Defendant's right to use a

13

time clock to determine the beginning and ending of the shift. (MOU at 16). Whether this permits the rounding policy is a matter of interpretation for the state law breach of contract and unjust enrichment counts.[3] Therefore, the Plaintiff implicitly referred to the CBA in the Second Amended Complaint.

### c. Centrality of the CBA

Under the fourth element, the document must be central to the complaint. To establish a prima facie case of breach of contract in Georgia, the plaintiff must show (1) breach of the contract and (2) the resultant damages (3) to the party who has the right to complain about the contract being broken. *Budget Rent-a-Car of Atlanta, Inc. v. Webb*, 220 Ga. App. 278, 279 (1996). A document is central to a plaintiff's complaint when the document would be a necessary part of the plaintiff's effort to make out his claim. *Day*, 400 F.3d at 1276. "The potential harm that courts are mindful of [when the question is close] is the lack of notice that the attached document may be considered by

---

[3] Courts in this district have found similarly. In *Jones v. United Parcel Service, Inc.*, 2008 WL 282311, at *1 (N.D. Ga. Jan. 31, 2008), the plaintiff filed a state-law breach of contract action alleging that the defendant had underpaid him "under the terms of the contract under which he works." The defendant, in its motion to dismiss, attached a CBA between the defendant and the union for consideration under the motion to dismiss. *Id.* Because a CBA between the defendant and the union was the only contract between the plaintiff and the defendant, the court examined the CBA in the motion to dismiss without converting the action into a motion for summary judgment. *Id.* at *1 n.1; *see Kelly v. Se-Atl. Beverage Corp.*, 2009 WL 10699352, at *1 n.1 (N.D. Ga. Apr. 28, 2009) (admitting a CBA at the motion to dismiss stage because it was the only valid contract between the parties since the CBA restricted any other contracts between the defendant and its employees).

the court." *Fin. Sec. Assurance, Inc.*, 500 F.3d at 1285.

Here, the Plaintiff makes the argument that the CBA is not central to its breach of contract and unjust enrichment claims because, while the CBA may be referenced, an interpretation of the CBA is unnecessary. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 19-20). However, the Defendant correctly note that it is necessary for the Plaintiff to establish that the management powers in Article IV of the CBA do not allow the rounding policy employed by the Defendant. (Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 7-8). If they do, then the Plaintiff would not be able to establish a claim of breach of contract or unjust enrichment because there would be no breach by the Defendant or alternatively, no justifiable reliance on a promise of payment.

The Plaintiff further directs the Court to look to its Second Amended Complaint for the provision that states that "resolution of the legal and factual questions of whether [the] Defendant[] breached their respective agreements with Plaintiff and their hourly employees and/or were unjustly enriched does not require interpretation of a collective bargaining agreement and, instead, is entirely independent of any such agreement" as dispositive to the issue of centrality. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 5-6; *see* 2d Am. Compl. ¶ 65). However, the Eleventh Circuit is clear that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). The

15

Plaintiff's membership within the Union, along with the necessary interpretation of the CBA to determine the rights of the Defendant, directly contradict the Second Amended Complaint. Therefore, the CBA documents are central to the Plaintiff's claim. Because the CBA documents have met all four requirements necessary to satisfy the exception to the use of extraneous documentation within a 12(b)(6) motion, this court will consider the CBA documents within the Defendants' Motion to Dismiss.

### 3. Section 301 Preemption

The Defendant contends that the Labor Management Relations Act ("LMRA") preempts the Plaintiff's state law claims of breach of contract and unjust enrichment. The Plaintiff argues that it does not.

Section 301(a) of the LMRA ("Section 301") provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Supreme Court interpreted Section 301 to authorize federal courts to fashion a body of federal law for the enforcement of collective bargaining claims. *See Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403 (1988). Ultimately, Section 301 operates to preempt state law claims in order to

16

"ensure uniform interpretation of collective-bargaining agreements and [ ] to promote the peaceable, consistent resolution of labor-management disputes." *Id.* at 404. In determining whether Section 301 preempts a state law cause of action, a court must consider whether the claim arises from a collective bargaining agreement or whether the resolution of the state law claim depends upon the meaning of a collective bargaining agreement. *Atwater v. NFLPA*, 626 F.3d 1170, 1176 (11th Cir. 2010) (first citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 217 (1985); and then citing *Lingle*, 486 U.S. at 405-06). If the state law claim either arises out of a collective bargaining agreement or is dependent on the meaning of a collective bargaining agreement, then state law claims are preempted. *Id.* at 1176-77 (citing *Lingle*, 486 U.S. at 406). The Court considers each of the state law claims here in turn. *See id.* at 1179.

### a. Breach of Contract

As previously mentioned, to establish a breach of contract claim in Georgia, a plaintiff must show that (1) a valid contract exists, (2) there was a breach of the contract, and (3) the resultant damages (4) to the party who has the right to complain about the contract being broken. *Budget Rent-a-Car of Atlanta, Inc.*, 220 Ga. App. at 279.

Here, the Plaintiff alleges that "[the] Defendant[] had binding and valid contracts with [the] Plaintiff . . . to pay each employee for each hour they worked, including, but not limited to, straight time in non-overtime

17

workweeks, at a pre-established (contractual) regular hourly rate" for services provided by the employees of the Defendant. (2d Am. Compl. ¶ 84). As evidence of such contracts, the Second Amended Complaint directs the Court to the offer letters, pay statements, and other documentary evidence in the Defendant's position. (*Id.* ¶ 85). Notably, it omits the CBA, and the Second Amended Complaint includes a disclaimer that the issue may be adjudicated independent of any interpretation of the CBA. (*Id.* ¶ 65). The Plaintiff alleges breach of contract as a result of "[the] Defendants' unlawful time rounding policy." (*Id.* ¶ 87).

Here, the CBA is central to the issue of whether there is a breach of the contract. *See* Section III.A(2)(c), *supra*, at p. 14-16. The Plaintiff's success on his breach of contract claim depends entirely on the interpretation of the CBA because his employment is governed by the CBA and the offer letter is silent on the matter. [4] Merely stating that an interpretation of the CBA is

---

[4] *See Bartholomew v. AGL Res., Inc.*, 361 F.3d 1333, 1339 (11th Cir. 2004) (affirming the district court's ruling that a state law breach of contract action that requires interpretation of a collective bargaining agreement is preempted by Section 301); *Baldwin v. Boise Paper Holdings, L.L.C.*, 631 F. App'x 831, 834 (11th Cir. 2015) (holding that a state law breach of contract action arising out of an employment dispute governed by a collective bargaining agreement and a last-chance agreement required interpretation of those documents and was therefore preempted by Section 301); *cf Peterson v. BMI Refractories*, 132 F.3d 1405, 1412-14 (11th Cir. 1998) (holding that state law tort actions arising out of an employment dispute governed by a collective bargaining agreement did not require interpretation of the document and therefore was not preempted by Section 301).

unnecessary within the Second Amended Complaint will not defeat a finding of preemption when any inquiry into the breach will require interpreting provisions of the CBA. Therefore, Section 301 preempts the Plaintiff's breach of contract claims within the Second Amended Complaint.

### b. Unjust Enrichment

A claim for unjust enrichment in Georgia exists when (1) there is no legal contract, (2) "the plaintiff asserts the defendant induced or encouraged the plaintiff to provide something of value to the defendant," (3) "the plaintiff provided a benefit to the defendant with the expectation that the defendant would be responsible for the cost thereof," and (4) "the defendant knew of the benefit being bestowed upon it by the plaintiff and either affirmatively chose to accept the benefit or failed to reject it." *Campbell v. Ailion*, 338 Ga. App. 382, 386-87 (2016).

Here, the Plaintiff's specific allegation in Count III states that "[the] Defendant[] induced and/or encouraged Plaintiff . . . to perform non-exempt hourly manufacturing work, including, but not limited to, the pre- and post-shift work described herein, by promising [the] Plaintiff . . . a pre-established base hourly rate in consideration of manufacturing work duties." (2d Am. Compl. ¶ 97). The Plaintiff alleges that it was this promise that he relied on in performing his employment duties and that the Defendant knew of this reliance, leading to the unjust enrichment arising out of the time

rounding policy. (*See id.* ¶ 99).

Like the breach of contract claim, the Plaintiff's state law unjust enrichment claim depends on the interpretation of the CBA. Although authority within the Eleventh Circuit is sparse, *Moon v. Goodyear Tire & Rubber Co.*, 519 F. App'x 620 (11th Cir. 2013), is instructive on the issue. In *Moon*, the plaintiff brought a number of state law claims against its employer, including breach of contract and unjust enrichment, for withheld separation payments arising out of an application for a buyout. *Moon*, 519 F. App'x at 622-23. The defendant filed a motion to dismiss, arguing that the claims were preempted by Section 301. *Id.* at 622. In considering whether the plaintiff's unjust enrichment claim was preempted by Section 301, the court noted that the application itself lacked terms related to the buyout and adopted the buyout provisions of a collective bargaining agreement. *Id.* at 624. The court affirmed the decision to apply Section 301 preemption to the unjust enrichment claim because "to determine whether equity and good conscience dictates that [the plaintiff] recover the money he requests, [the court] must interpret the only terms provided—the buyout provisions of the collective bargaining agreement." *Id.*

Similarly, the Plaintiff is subject both to its offer letter and the CBA with the Defendant because the Plaintiff is a member of the Union. The

Plaintiff acknowledges that the offer letters lack any mention of the rounding issue. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 6). However, whether the CBA does cover rounding will require interpretation of the CBA because it contains the only possible terms relating to the rounding issue. Mere consultation of the CBA, like the Plaintiff argues, is not enough to determine the crux of the unjust enrichment claim.

The Plaintiff asks the Court to look to persuasive authority in *Powell v. IKEA Industry Danville, LLC,* 2019 WL 2438793 (W.D. Va. June 11, 2019), as support for his position that a state law unjust enrichment action is not preempted by Section 301 when the claim is premised on unlawful rounding by the employer. (*See* Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 20-21). In *Powell*, the plaintiff contended that the defendant had a policy of rounding their employees' clock-in and clock-out time to the defendant's benefit and brought a state law claims against her employer. *Powell*, 2019 WL 2438793, at *1. The defendant argued, within its motion to dismiss, that Section 301 preempted the plaintiff's state law unjust enrichment claim because an interpretation of an existing collective bargaining agreement would be required to determine whether such rounding was permissible within the terms of the contract. *Id.* at *2. The district court determined that ambiguous terms within the collective bargaining agreement regarding "work" and "hours worked," as well as the lack of a rounding policy, did not shed any light on

whether the plaintiff's unjust enrichment claim would succeed. *Id.* Using these bases, the district court concluded that Section 301 did not preempt the plaintiff's unjust enrichment claim. *Id.*

However, *Powell* is distinguishable. The inquiry into the CBA and the MOU would not look at general terms such as "work," but would instead inquire into whether the Defendant's rounding policy is permissible under certain management provisions afforded to the Defendant under the CBA. Furthermore, the MOU explicitly mentions the Defendant's right to use a time clock to determine the hours worked. (*See* MOU at 16). An interpretation of the CBA will therefore be necessary for the Plaintiff to succeed on his unjust enrichment claim. Thus, Section 301 preempts the Plaintiff's unjust enrichment claim within the Second Amended Complaint.

### c. Section 301 Claim

"[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the claim must either be treated as a § 301 claim [ ] or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp.*, 471 U.S. at 220; *see Bartholomew,* 361 F.3d at 1342 (treating preempted state law claims as Section 301 claims instead of dismissal). Dismissal is proper when the plaintiff fails to utilize the grievance procedure established within a controlling collective bargaining agreement. *Moon*, 519 F. App'x at 624 (citing

*Allis-Chalmers Corp.*, 471 U.S. at 220-21).

Here, neither party disputes that the CBA contains a grievance procedure. Indeed, Article VII of the CBA, entitled "Grievance Procedure," describes the four-step process in which an employee or employees may submit any grievance to the management of the Defendant for arbitration (the "Grievance Procedure"). (*See* CBA at 38-42). However, the Plaintiff contends that he does not need to exhaust the Grievance Procedure because use of the procedure is not mandatory. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 21-22). The Plaintiff focuses on the use of the word "may" in portions of the Grievance Procedure as support for the proposition that the Grievance Procedure is optional. (*Id.*). Alternatively, the Plaintiff argues that even if the Court determines that the Grievance Procedure is mandatory, the terms of the Grievance Procedure are ambiguous due to the usage of the word "may." (*Id.* at 22). Such a waiver would be ineffective because waiver of a judicial forum must be "clear and unmistakable." (*Id.* at 22 (citing *Williams v. Ga. Stevedore Ass'n, Inc.*, 2013 WL 1130741, at *3 (S.D. Ga. Mar. 18, 2013) (citation omitted))).

The Plaintiff's argument falls short for two reasons. First, a grievance-arbitration procedure using the term "may" can still be construed as mandatory when read as a whole. (*See* Reply Br. in Supp. of Defs.' Mot. to Dismiss, at 11-12 (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 658-59

(1965))). Here, Section 1 of the Grievance Procedure states that "[a]ll differences as to the meaning and application of the provisions of this agreement, or *as to any question relating to wages, hours of work, or other conditions of employment* of any employee **shall** be taken up as hereinafter set forth." (CBA at 38-39 (emphasis added)). It is only after this provision that the term "may" appears, used within Section 2 of the Grievance Procedure, suggesting that the Grievance Procedure is not mandatory. (*See id.*, at 39). If Section 2 were read in a vacuum, the Plaintiff would be correct. However, when reading the Grievance Procedure as a whole, inclusive of Section 1, the Grievance Procedure is clearly mandatory in nature.

Second, the Grievance Procedure as amended in the MOU makes arbitration mandatory. Amendments to the CBA through the MOU state that "the union must request arbitration" after the conclusion of the first three steps in the Grievance Procedure. (MOU at 5). Such amendment is further evidence of the parties' intent with regard to the mandatory nature of the Grievance Procedure, since the change would be ineffective without mandatory application of the Grievance Procedure. Therefore, the Grievance Procedure is mandatory.

The Plaintiff further argues that requiring him to use the Grievance Procedure would leave him without a remedy because an arbitrator would not be able to grant the Plaintiff relief for his state law claims under the terms of

the CBA. (Pl.'s Br. in Opp'n to Defs.' Mot. to Dismiss, at 23). Specifically, the Plaintiff contends that the text of the jurisdictional limitations present within the Grievance Procedure for the arbitrator prevent issues of rounding from being arbitrated. However, this argument is unsupported by the plain text. The provision reads as follows:

> The jurisdiction of the arbitrator shall be limited to *the interpretation of the meaning and application of the provisions of this Agreement*. He shall have *no power to change, modify or alter the existing contract between the parties* or any of the provisions of the same or to change any wage rate established in the contract except as provided under Article VIII, Section 2, *nor can he consider requests for general increases in wages*, except that he will have the authority, if justified by the facts, to modify a discharge.

(CBA at 41 (emphasis added)).

The Plaintiff's state law claims neither require an arbitrator to change, modify, or alter the existing contract between the parties nor do they request a change to any wage rate established in the contract. The Second Amended Complaint only contains allegations that the Defendant paid the Plaintiff less than he was owed under the existing contract. Therefore, arbitration will provide the Plaintiff with a remedy if he succeeds on his claims.

Because the Plaintiff has failed to utilize the Grievance Procedure, the Court cannot recharacterize the Plaintiff's state law claims as Section 301 claims. Therefore, Counts II (breach of contract) and III (unjust enrichment) of the Seconded Amended Complaint are dismissed.

The Defendant also argues that the Plaintiff failed to properly plead his unjust enrichment claim within the Second Amended Complaint as an alternative theory of recovery. The Defendant further argues that the existence of a valid CBA requires dismissal of the unjust enrichment claim in the Second Amended Complaint. The Court need not address these contentions because Count III of the Second Amended Complaint has been dismissed.

## B. Motion for Conditional Collective Certification

### 1. Motion and Arguments

The Plaintiff moves for conditional collective certification of a proposed FLSA collective and for the Court to authorize notice of the action. Specifically, under 29 U.S.C. § 216(b), the Plaintiff requests the Court to enter an order:

(1) Authorizing Notice of [the instant action] be issued . . . ;

(2) Authorizing [the] Plaintiff's proposed forms of notice . . . and implementing a procedure whereby the notice of [the] Plaintiff's FLSA claims is sent (via U.S. Mail, email, and text message) to: *All current and former hourly manufacturing employees of [the] Defendant[] in the United States who worked at least forty hours in a workweek at any time in the past three years* (the "FLSA Collective");

(3) Requiring [the] Defendant[] to provide to Plaintiff, within fourteen [ ] days of the entry of the order, a list of all FLSA Collective members who worked for [the] Defendant[] at any time in the past three years . . . ;

(4) Appointing [the Plaintiff's counsel] as counsel for the FLSA Collective;

(5) Giving members of the FLSA Collective sixty [ ] days from the date of the notice is mailed to join this case, if they so choose; and

(6) Permitting one reminder email to be sent thirty days after notice is issued to anyone that did not respond.

(Pl.'s Mot. to Certify, at 1-2 [Doc. 50]).

The Plaintiff argues that collective members are similarly situated through the allegations contained within the Second Amended Complaint and the declarations attached to its motion. (Br. in Supp. of Pl.'s Mot. to Certify, at 17). He alleges that the nine declarations show that members of the FLSA Collective were subject to similar policies and are similarly situated. (*Id.*). The Plaintiff also argues that a merits determination of his claims is improper at this stage and not part of the conditional certification inquiry. (*Id.* at 18-19).

The Defendant raises three arguments for why the putative collective members are not similarly situated. First, the Defendant takes issue with the breadth of the class definition. The Defendant contends that nationwide actions are more heavily scrutinized and that the Plaintiff's nine declarations only cover five of the Defendant's seventy-two locations. (Defs.' Br. in Opp'n to Mot. to Certify, at 13-14 [Doc. 58]). Furthermore, the Defendant argues that consent forms from locations outside of the affidavits do not offer any evidence alleging illegal policies at such locations. (*Id.* at 14).

Second, the Defendant also takes issue with certification at any of the five facilities where the declarants work or worked for the Defendant. The Defendant attacks the vague nature of the declarations and characterizes them

27

as conclusory. (*Id.* at 15-16). In addition, the Defendant alleges that the Lumberton Carton plant should be excluded because Declarant Miranda Chavis is time-barred and rounding ceased more than three years before the action was filed. (*Id.* at 15).

Third, the Defendant argues that factual differences among putative collective members with regard to how wages are paid across facilities, along with changes in calculation methods, make a collective action unmanageable. (*Id.* at 17).

In the alternative, the Defendant argues that limits should be imposed on the collective if it is certified. (*Id.* at 19). First, the Defendant asks the Court to exclude all individuals subject to mandatory arbitration agreements from the collective. (*See id.* at 19-20). Second, the Defendant requests that any certified collective be limited to, at most, three facilities where some of the declarants worked. (*Id.* at 20-21). Third, the Defendant argues that any collective should be limited to members who were subject to both rounding and earned shift differential premiums. (*Id.* at 21). Finally, the Defendant requests that any collective should be limited to individuals whose overtime was calculated using the "rate in effect" method. (*Id.*).

## 2. Similarly Situated

The Court will first determine whether a potential member of the collective action would be similarly situated to the Plaintiff and other putative

collective members. The low evidentiary burden established by the Eleventh Circuit requires a plaintiff to show either (1) that their job positions and duties are similar to those positions held by the putative collective members or (2) that the plaintiffs and the putative collective members were all subject to the same unified policy, plan or scheme that forms the basis of the alleged FLSA violation. *Campo*, 584 F.Supp.3d at 1343 (first citing *Hipp*, 252 F.3d at 1219; then citing *Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1096 (11th Cir. 1996); and then citing *Morgan*, 551 F.3d at 1262-64).

Supplementing the Eleventh Circuit's standard, courts within this district have fashioned an implicit evidentiary requirement for plaintiffs seeking conditional collective certification. If a plaintiff seeks *nationwide* certification under FLSA, the plaintiff must offer adequate proof that shows that all putative collective members across the nation are "similarly situated." For example, in *Beecher v. Steak N Shake Operations, Inc.*, 904 F. Supp. 2d 1289 (N.D. Ga. 2012), the plaintiffs similarly submitted a motion to conditionally certify a nationwide collective action that covered "[a]ll hourly-paid employees who worked at anytime . . . at any STEAK N SHAKE restaurant owned by defendant STEAK N SHAKE OPERATIONS, INC." for FLSA violations arising out of a failure to pay minimum wage and overtime. *Beecher*, 904 F. Supp. 2d at 1292. In support, the plaintiffs pointed to the declarations from fourteen of the twenty-three named and opt-in plaintiffs that

the defendant engaged in a nationwide unlawful practice. *Id.* at 1294. The court ultimately denied the plaintiff's motion, in part because out of the twenty-three plaintiffs, twenty plaintiffs worked in a singular state while the remaining three were from three other states. *Id.* at 1299-1300. The court found that plaintiffs from only four states and seven establishments could not establish that the practice was widespread across the nation at over four-hundred establishments. *Id.* at 1299. The court did not make this determination based on the number of plaintiffs within the action but rather their geographic distribution.[5]

Here, the Plaintiff would have met his burden in satisfying the "similarly situated" prong if the collective action were not nationwide. Each declarant's job positions and duties are similar to those positions held by the putative collective members. All nine declarants[6] are employees of the

---

[5] *See id.* at 300 (distinguishing *Jewell v. Aaron's, Inc.*, 2012 WL 2477039, at *1 (N.D. Ga. June 28, 2012), where the court certified a conditional collective action with a lesser number of plaintiffs, but they were from twenty-three different cities and eleven states); *see also Mason v. Atlanta Beverage Co.*, 2018 WL 3655374, at *5 (Aug. 2, 2018) (modifying the grant of conditional certification to members from two of the three locations operated by the defendant when the plaintiff failed to allege that the defendant's unlawful practice existed at that location); *Aiuto v. Publix Super Mkts, Inc.*, 2020 WL 2039946, at *5-6 (N.D. Ga. Apr. 9, 2020) (holding that the plaintiffs were similarly situated in a nationwide collective action, in part because sixteen declarations were provided from current and former employees at various locations across five different states).

[6] The Defendant contests the factual basis of declarant Miranda Chavis's declaration on the basis of the dates of her employment and whether she was subject to rounding. (Defs.' Br. in Opp'n of Pl.'s Mot. to Certify, at 4, 5,

Defendant within the last three years who (1) were all paid an hourly rate, (2) regularly worked over forty hours in a workweek, (3) received shift premiums, and (4) were responsible for performing manufacturing of packaging for commercial products.[7] (*See* Br. in Supp. of Pl.'s Mot. to Certify, Exs. C-K [Docs. 50-5, 50-6, 50-7, 50-8, 50-9, 50-10, 50-11, 50-12, 55]; Reply Br. in Supp. of Pl.'s Mot. to Certify, at 3 [Doc. 59]). Furthermore, each of the collective members were all subject to the same policy, plan, or scheme that forms the basis of the alleged FLSA violation. The Plaintiff's allegations within the Second Amended Complaint arise out of unpaid overtime and rounding. All declarants allege that they were subject to "rate in effect" or the alleged rounding within their declarations. (*See* Br. in Supp. of Pl.'s Mot. to Certify, Exs. C-K). It is not necessary for each member of the collective to be subject to both alleged violations of the FLSA as long as the policies were common to the FLSA violation.

However, the Court cannot certify the conditional collective because the Plaintiff has failed to show how all putative collective members nationally are similarly situated to the Plaintiff and other putative collective members. While

---

Ex. C). However, the sole purpose of conditional certification is to facilitate notice, not to address the substance or merits of the collective plaintiffs' claims. *Morgan*, 551 F.3d at 1259. Whether Chavis' claims against the Defendant are meritorious is a question not presently before the Court. Therefore, the declaration from Chavis will be considered in this analysis.

[7] The Defendant did not contest these facts from the declarations.

the Plaintiff may be able to show that he and the declarants are similarly situated, the Defendant correctly notes that the Plaintiff fails to demonstrate that the putative collective members nationwide would also be similarly situated to the Plaintiff and the declarants. The Plaintiff's sole proof arises from nine declarants that are separated across three states and five facilities. (*See* Br. in Supp. of Pl.'s Mot. to Certify, Ex. C-K; Defs.' Br. in Opp'n to Pl.'s Mot. to Certify, at 15-16). In comparison, if the Plaintiff's collective was conditionally certified, it would apply across all seventy-two facilities within twenty-five states. (*See* Defs. Br. in Opp'n to Pl.'s Mot. to Certify, at 2 (discussing the size of the Defendant's operations)). Despite the low evidentiary threshold, the Plaintiff's declarations cannot establish that all potential collective members are similarly situated when the declarants lack geographic diversity with respect to the national operations of the Defendant. Therefore, the Court cannot conclude that the putative collective would be similarly situated.

Because the Plaintiff has failed to establish the "similarly situated" requirement for FLSA collective actions, the Court need not address whether the Plaintiff has a reasonable basis that employees will opt in to the action or whether the Plaintiff's form of notice is proper, as those issues are moot. For these reasons, the Plaintiff's Motion for Conditional Collective Certification [Doc. 50] will be denied.

### IV.    Conclusion

For the foregoing reasons, the Defendants' Partial Motion to Dismiss [Doc. 45] is GRANTED in part and DENIED in part, the Plaintiff's Motion for Conditional Collective Certification [Doc. 50] is DENIED, and the Plaintiff's Motion for a Status Conference [Doc. 61] is DENIED as moot.

SO ORDERED, this    10th    day of September, 2025.


THOMAS W. THRASH, JR.
United States District Judge